## THE LISBON.

### HANLON DRY DOCK & SHIPBUILDING CO., Inc., v. CALIFORNIA RECLAMATION DIST. NO. 307.

(Circuit Court of Appeals, Ninth Circuit. January 26, 1925.)

No. 4329.

1. Admiralty ⬡⇒43—Dredge of reclamation district held exempt from seizure to enforce liens.

A dredge belonging to or engaged in the service of a reclamation district is exempt from seizure to enforce a lien in admiralty, notwithstanding it may be subject to suit, and notwithstanding that vessel may be used at times for other than public purposes.

2. Drains ⬡⇒13—Reclamation district held "public agency," though differing in many respects from other municipalities.

A reclamation district having power of taxation and organized for a public purpose is a "public agency," though organized primarily for the benefit of landholders within its limits and exercising but few governmental functions, and though its members resemble in most respects stockholders of a private corporation.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Public Agency.]

3. Admiralty ⬡⇒57—General appearance and giving bond for release of dredge by reclamation district not waiver of claimant's immunity.

A reclamation district, which appeared generally claiming a dredge libeled in admiralty and giving bond for her release, held not to waive its right to claim immunity as a public agency from seizure of the dredge; the bond in admiralty being but a substitute for the property, and the case proceeding as if the vessel were in court.

Appeal from the District Court of the United States for the Third Division of the Northern District of California; John S. Partridge, Judge.

Libel by the Hanlon Dry Dock & Shipbuilding Company, Inc., against California Reclamation District No. 307, also known as Reclamation District No. 307, claimant of the dredge Lisbon. Decree for claimant, and libelant appeals. Affirmed.

Bell & Simmons and Golden W. Bell, all of San Francisco, Cal., and Fitzgerald, Abbott & Beardsley, of Oakland, Cal., for appellant.

Louis T. Hengstler and Frederick W. Dorr, both of San Francisco, Cal., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

GILBERT, Circuit Judge. The question presented on this appeal is whether a dredge belonging to a reclamation district of the state of California, and used for necessary reclamation work, is subject to a maritime lien for repairs to her hull and the use of a dry dock furnished at the instance of her master and owner. The court below held that the dredge was exempt from a lien in admiralty and dismissed the libel. The Supreme Court of California, while passing by the question whether or not a reclamation district is a public corporation, ruled that, whether it is a public corporation or but a public agency, it has no right to acquire property except for the purpose of carrying on the work of reclamation and matters incident thereto. Said the court: "Property devoted to that sort of public use, and belonging to a public corporation or public agency, cannot be levied on and sold to satisfy judgments against such corporation or agency. The only means by which the plaintiff could obtain payment of such a judgment would be by resort to the remedy which he had in the first instance—that is to say, a suit in mandamus to compel the levy-

ing of an assessment." San Francisco Savings Union v. Reclamation District, 144 Cal. 639, 79 P. 374.

[1] It is well settled that a vessel belonging to or engaged in the service of a municipality is exempt from seizure. 1 C. J. 1263; The Fidelity, Fed. Cas. No. 4,758, 16 Blatchf. 569; The Protector (C. C.) 20 F. 207; The F. C. Latrobe (D. C.) 28 F. 377; The John McCraken (D. C.) 145 F. 705. These decisions and others similar to them are cited by the court in Ex parte State of New York No. 2, 256 U. S. 503, 41 S. Ct. 592, 65 L. Ed. 1063, a case in which it was held that under the Admiralty Law a vessel owned and possessed by a state and employed exclusively for its governmental purposes is exempt from seizure for a tort caused by her negligent operation. It is true that in that case and in some of the other cases so cited and approved in the opinion attention is directed to the exclusive governmental use of the vessel. Thus it is said that the vessel was employed "exclusively for governmental purposes," or that it was "devoted to public use and necessary for carrying on the operations of the government," or that it was a vessel "engaged in exercising a function of government," and the appellant contends that a reclamation district does not come within the principle of those cases for the reason that it performs little or none of the functions of government, and under the statute of the state is expressly declared to be subject to suit. The objection that it is subject to suit does not seem to be material. It is answered in The Fidelity, supra, where Chief Justice Waite said: "As has already been seen, the public property of a municipal corporation cannot be seized on an execution, although the corporation may be sued to obtain a judgment on which an execution can issue." It is also answered in The Onteora (D. C.) 298 F. 553. Nor do we think decision in any of the cases above cited was controlled by the consideration that the vessel was employed exclusively for governmental purposes, or that upon principle it could be so held. The essential fact is that the vessel is the property of a public agency or municipality and is necessary for the carrying on of some essential operation thereof. In that view it is not material that the dredge in the present case was not used exclusively for the district which owned it, and for the major portion of the time was let for hire to similar districts. It still remains that it was a necessary instrument for the use and sustention of the district to which it belonged.

[2] It may be conceded that a reclamation district differs from municipalities, in that it is organized primarily for the benefit of those who hold land within its limits and it exercises but few governmental functions. It has, however, the power of taxation, and although its members resemble in most respects the stockholders of a private corporation, there is, aside from the mere benefit of a reclamation district to those who are immediately affected thereby, a public benefit to the state in the improvement of lands that otherwise would be less productive. But after all is said, the controlling facts are that the Supreme Court of the state, in construing the act of the Legislature, entitled "An act to provide for the organization and government of irrigation districts, and to provide for the acquisition of water and other property, and for the distribution of water thereby for irrigation purposes" (St. Cal. 1887, p. 29), has recognized the reclamation districts of California as public agencies and has held that property necessary for their use is not subject to execution. Not being subject to execution, it is, of course, exempt from seizure in rem in an admiralty court. A case in point is The Onteora, supra. There the libel was in rem against steamers belonging to the Commissioners of Palisades Interstate Park, a corporation aggregate with power to sue and be sued, created by the laws of New York and New Jersey. The steamers were used for access by the public to the park. It was held that the steamers, being used as a state agency, were exempt from seizure for tort.

[3] It is contended that the appellee waived any immunity which it might have had by appearing generally, claiming the dredge, and giving bond for her release. But such acts, while they may constitute a waiver of service of process, cannot, of course, constitute a waiver of jurisdiction of the subject-matter of a suit. A bond accepted by the court upon ordering the delivery to a claimant of property seized in admiralty is but a substitute for the property. United States v. Ames, 99 U. S. 35, 25 L. Ed. 295. The stipulation takes the place of the vessel, and for the purposes of the trial the case goes on as if the vessel were in court. The Fidelity, Fed. Cas. No. 4,758, 16 Blatchf. 569, 576. In The Monte A (D. C.) 12 F. 331, 335, Judge Brown said: "An action purely in rem is itself limited to a proceeding against the res, and a general appearance in such an action should, it seems to me, be deemed no more general than the limited nature and scope of the action itself,

and of no greater effect than the special appearance to vacate an unauthorized arrest or attachment upon a general suit in personam." Said the court in The Hungaria (D. C.) 41 F. 109, 112, "The act of the master in stipulating for the ship cannot give the court jurisdiction which it did not have."

The decree is affirmed.