In the Matter of the Rehabilitation of UNION GUARANTEE AND MORTGAGE COMPANY.

Supreme Court, New York County, December 5, 1935.

*Benjamin J. Rabin* [*Daniel A. Dorsey* of counsel], for the Mortgage Commission of the State of New York.

*Milbank, Tweed, Hope & Webb* [*Timothy N. Pfeiffer* and *W. W. Crosskey* of counsel], for the Chase National Bank of the City of New York.

FRANKENTHALER, J. This is an application by the Mortgage Commission of the State of New York for an order directing the Chase National Bank to turn over to the Commission twelve bonds and mortgages which are at present in the bank's possession as depositary pursuant to the terms of an agreement with the Union Guarantee and Mortgage Company, dated November 15, 1927, as supplemented by an agreement dated November 21, 1928.

The guarantee company is at present in the control of the Superintendent of Insurance for purposes of rehabilitation. Prior to the commencement of rehabilitation proceedings, the company had sold to the public certificates representing undivided interests in the mortgages, accompanied by its guaranty. Each certificate stated that the company " has assigned and transferred and by these presents does assign and transfer unto " the certificate holder " an undivided share or interest to the extent of said principal sum in the Bond and Mortgage described on the back of this Certificate, and the Company hereby certifies that it has deposited said Bond and Mortgage together with insurance and title policies and other instruments and evidences of title relating thereto with The Chase National Bank of the City of New York (hereinafter called the Depositary) under the terms of an agreement made between the Company and the Depositary, dated ——————————, 1927, pursuant to which this Certificate is issued and to all provisions of which the holder hereof, by acceptance of this Certificate, shall be bound. The deposit has been made for the benefit of the Assured (the certificate holder) and of any other persons interested in said Bond and Mortgage at its principal office, 57 Broadway, New York City. Except as otherwise stated in said agreement, said papers shall remain on deposit with the Depositary or its successors and assigns until this and all other certificates of participation in said mortgage shall have been surrendered and duly cancelled, or until the full amount of the principal and interest represented by any certificates not surrendered shall have been paid to the Depositary." The certificates represent interests in specific single mortgages and not in " group mortgages." No power of substitution was reserved to the company.

The present application is predicated upon the provisions of section 6 of the Mortgage Commission Act (Laws of 1935, chap. 19), which purports to authorize the Mortgage Commission to " take over from the superintendent of insurance and/or the superintendent of banks, * * * and from any agent appointed by either of them, and from all guaranty corporations in rehabilitation or liquidation, * * * and from all *depositaries*, custodians and agents acting in respect thereof, possession and control of, and

legal title to, all of the bonds, notes, other evidences of indebtedness and mortgages in respect whereof outstanding mortgage investments have been issued or guaranteed by such guaranty corporations." (Italics the court's.)

The motion is opposed solely on the ground that section 6 of the Mortgage Commission Act, in so far as it purports to require the Chase Bank to turn over to the Commission the twelve bonds and mortgages in the bank's possession, is unconstitutional as an impairment of the obligations of the certificate holders' contract and as a deprivation of their property.

In *Matter of People (Tit. & Mtge. Guar. Co.)* (264 N. Y. 69) the Court of Appeals (at pp. 89, 90) overruled the contention that the Schackno Act (Laws of 1933, chap. 745, as amd.) was unconstitutional to the extent that it authorized the Superintendent of Insurance to take from the depositary securities which the guaranty company agreed to leave in the former's custody: " It is said that in some minor particulars the powers of administration accorded to the Superintendent of Insurance are greater than the authorized powers exercised by the guaranty company. He may take from the depositary securities which the guaranty company agreed to leave in the custody of the depositary. The depositary had no property in or right to the securities so deposited. When the guaranty company became insolvent, the depositary had no duty or function except to hold the deposited securities till they could be delivered to some person authorized to conserve or administer the securities for the benefit of those entitled to their proceeds. A direction to deliver the securities to the Superintendent of Insurance, who has such authority, impairs no obligation of the contract." More recently, in *Matter of People (Westchester Tit. & T. Co.)* (268 N. Y. 432), the same court upheld the right of the Mortgage Commission to take over the control and servicing of a " mortgage investment " from the issuing company which had been named as the servicing agent in the certificates and also in a plan of reorganization effected under the Schackno Act. The court said: "At least until those interested in the investment have agreed upon some other method of control and administration of the investment, the Legislature could give to a public officer the authority in such case to take care of the mortgage investment and to take appropriate steps for the protection of the holders of certificates. * * * Change of depository and substitution of agent under these circumstances do not constitute an impairment of the obligation of the contract between the certificate holders and the guaranty corporation within the scope of the constitutional restriction of the power of the State."

It is argued that the case of *Matter of People (Tit. & Mtge. Guar. Co.) (supra)* does not apply here because the certificates there involved, as construed by the court, did not confer upon their holders the ownership of the underlying bonds and mortgages, but merely gave the certificate owners the rights of pledgees or holders of collateral security, the guaranty company retaining ownership of the mortgages as " primary debtor." The respondent contends that this analysis of the relationship between the guaranty company and the certificate holders is based upon circumstances not present in the instant case. In the case cited the underlying security for the certificates consisted of a group of mortgages, with power of substitution reserved to the guaranty company, and the latter had made an unconditional promise to pay the principal amount of the certificates, plus interest, transferring to the holder (p. 88) " only an interest in the deposited mortgages as collateral security for its debt." The certificates purported to transfer (p. 88) " an undivided, coordinate share of the same amount *in the principal sum secured by the bonds and mortgages* deposited or which may hereafter be deposited by the company with the Marine Trust Company of Buffalo." (Italics the court's.) In the case at bar, however, the underlying security for each certificate consisted of a single mortgage, with no power of substitution, and the certificate transferred " an undivided share or interest   *   *   *   in the Bond and Mortgage " itself, rather than in the indebtedness secured thereby. The company made no unconditional promise to pay the certificates of the character contained in the certificates construed by the Court of Appeals.

That these differences are not, however, sufficient to justify a departure from the decision reached in *Matter of People (Tit. & Mtge. Guar. Co.) (supra)* appears to be indicated in the opinion of the Court of Appeals in the later case of *Matter of People (Westchester Tit. & T. Co.) (supra)*. In the *Westchester* case the certificates, as here, purported to transfer to their holders undivided interests in a single mortgage. Moreover, they contained no such unconditional promise to pay as was to be found in the certificates involved in *Matter of People (Tit. & Mtge. Guar. Co.) (supra)*, the company's obligation to pay being predicated, as in the case at bar, upon its failure to collect the principal within eighteen months after the maturity of the bond and mortgage. These differences were treated by the court as unimportant for the purpose of determining the right to possession and control of the mortgage: " In *Matter of People (Title & Mortgage Guarantee Co.)* (264 N. Y. 69) this court sustained the validity of the earlier statute (Laws of 1933, ch. 745) which conferred similar authority and powers upon the

Superintendent of Insurance. True, in that case, the mortgage investment was evidenced by certificates of different form, and the interest of the holders of the certificates in the mortgage investment may, perhaps, have been less direct than the interest of the petitioner, here, in the mortgage investment over which the Mortgage Commission is now asserting right of control. Then, too, the provisions in regard to the depository of the mortgage are not the same. Such differences are, however, immaterial where the question concerns only the right to possession and control of the mortgage investment. Such differences do not affect the basic conditions which justified legislative action for the protection of the general welfare and the interests of holders of certificates. The rights of the certificate holders are substantially similar." In *Hutchinson* v. *Nassau County Trust Co.* (246 App. Div. 628) the Appellate Division (Second Dept.) upheld the constitutionality of section 6 of the Mortgage Commission Act without drawing any distinction between group and single mortgages.

Counsel for the depositary seek to draw an additional distinction between *Matter of People* (*Tit. & Mtge. Guar. Co.*) (*supra*) and the cause now before the court. They claim that the depositary in the adjudicated case had nothing more than custody of the bonds and mortgages, whereas the Chase National Bank possesses legal title to the bonds and mortgages in its possession. The *Hutchinson Case* (*supra*) does not pass upon this point, for there the depository stated that it " is not the owner of the legal title to the said bonds and mortgages so deposited." (Record on Appeal, fol. 72.) A brief reference to the facts here involved becomes necessary. The agreement of November 15, 1927, between the Chase National Bank and the Union Guarantee and Mortgage Company commences with a statement of the company's desire to sell to the public " undivided shares or interests," evidenced by certificates, in bonds and mortgages which " the Company desires from time to time to *deposit* with the Depositary." (Italics the court's.) The latter is to authenticate the certificates. Although the preambles contain no intimation that anything more than custody or possession of the bonds and mortgages is to be conferred upon the depositary, the first paragraph in the body of the agreement provides for the deposit of bonds and mortgages and " assignments properly executed and acknowledged so as to permit the recording thereof." The twelve bonds and mortgages which are the subject of the instant application were accompanied by assignments to the Chase Bank which the latter caused to be recorded. Thereafter certificates were issued by the company purporting to transfer to their purchasers " an undivided share or interest * * * in the Bond and Mortgage "

described therein which the company certified it had " deposited " with the Chase Bank for the benefit of the certificate holders. The certificates were authenticated by the depositary in the following language: " This is one of a series of certificates of an aggregate face amount of $ * * * issued by Union Guarantee & Mortgage Company against the *deposit* with the undersigned, of the bond and mortgage above described, in accordance with the provisions of an agreement dated November 15, 1927." (Italics the court's.) Neither the certificates issued by the company nor the authentication indorsed on them by the depositary contain even the slightest suggestion that the bonds and mortgages, in addition to being deposited with the Chase Bank, were also to be assigned or transferred to the latter. The language of the certificates is directly to the contrary, for they expressly state that the company is transferring to each certificate holder an undivided share or interest in the bond and mortgage deposited with the bank. Although the certificates do, it is true, provide that the holders, by acceptance thereof, are bound by all the provisions of the deposit agreement of November 15, 1927, there is nothing in them to put their holders on notice that the deposit agreement contains provisions which are utterly inconsistent with the express statement in the certificates that they constitute assignments of parts of the bonds and mortgages. Under these circumstances it may well be argued that the depositary is estopped from claiming that title to the deposited bonds and mortgages is in itself and not in the certificate holders, to whom the certificates purport to transfer it.

Even if it be assumed, however, that title to the bonds and mortgages is technically in the depositary, it seems to be clear that the latter's actual interest in them is no more substantial than if its custody of the bonds and mortgages were unaccompanied by bare legal title. Apparently the only purpose of the provision for assignment of the bonds and mortgages to the depositary was to enable the latter to record them, as some additional protection to certificate holders. If the depositary may be said to acquire any valuable rights under the deposit agreement, they are certainly no greater than those possessed by the depositary in *Matter of People (Tit. & Mtge. Guar. Co.) (supra)*. In this situation the mere existence of a technical legal title in the depositary appears to constitute insufficient basis for reaching an opposite result from that arrived at in the case cited. The statement in the court's opinion there (p. 90) that " the depositary had no property in or right to the securities so deposited " appears from the context to have referred to a property right of substance rather than a bare legal title without any substantial beneficial interest. In *Matter of People (West-*

*chester Tit. & T. Co.*) (*supra*) the court, as previously indicated, expressed the view that differences in the provisions of the deposit agreement are " immaterial where the question concerns only the right to possession and control of the mortgage investment," stressing the fact that " such differences do not affect the basic conditions which justified legislative action for the protection of the general welfare and the interests of holders of certificates," since " the rights of the certificate holders are substantially similar." From the standpoint of the certificate holders there is no material difference between the facts existing here and those present in the cases heretofore litigated.

As the court perceives no substantial difference between the situation now before it and that obtaining in *Matter of People* (*Tit. & Mtge. Guar. Co.*) (*supra*), the contention that section 6 of the Mortgage Commission Act is unconstitutional must be overruled. The motion is accordingly granted. Settle order.