Heffernan, J.
On March 16, 1949, the State Tax Commission made a tentative full valuation of petitioner’s special franchise in the borough of The Bronx, New York City, for the fiscal year 1949-50 and fixed a tentative rate of equalization applicable thereto. It gave petitioner notice that it had made such determinations and that it would meet at its office in the city of Albany on April 20, 1949, to hear and determine any complaint concerning such valuation and rate of equalization.
Meanwhile and in the latter part of March, 1949, the Legislature enacted chapter 346 of the Laws of that year and the same was approved by the Governor on March 31, 1949, and *247 became effective immediately. By the terms of that law the State Board of Equalization and Assessment was created as a temporary State commission for special purposes.
By section 1 of the statute in question the Legislature found that equalization rates throughout the State had not kept pace with the unusual increase in value of real estate resulting from inflation, lack of housing and other economic dislocations resulting from the war, and immediate and full review and revision thereof was required; that prompt establishment of accurate and equitable State rates of equalization was essential to the proper functioning of local government.
The Legislature determined that (a) to provide for prompt, effective and over-all review and revision of State rates of equalization and (b) to provide for the study of the problem of permanently assigning the administrative functions performed by the State pertaining to assessment and taxation of real estate generally, such objectives could best be accomplished by assigning to a temporary State commission those powers, functions and duties of the State Tax Commission, the State Board of Equalization and the Department of Taxation and Finance pertaining thereto, until such time as (a) revision of the State equalization rates has been completed by the new commission and (b) the Legislature has received its recommendations for the permanent assignment of such administrative functions (§§ 1,12). A deadline for both was established — April 1, 1952 (§ 15).
The Legislature accordingly directed that a temporary commission to be known as the State Board of Equalization and Assessment be created, to consist of three members to be appointed by the Governor, one of whom must be a member of the State Tax Commission.
Section 3 of the act provides as follows: “ Transfer of functions. Except as otherwise provided in this section, all of the jurisdiction, functions and powers possessed by and all the duties of the state tax commission, the state board of equalization and the department of taxation and finance, pertaining to or connected with the assessment and taxation of real estate, including but not limited to the determination of the full and equalized valuation of special franchises * * * are hereby transferred to, assigned to and devolved upon the state board of equalization and assessment.”
In the same section the Legislature itemized with meticulous precision each and every administrative function formerly performed by the three designated agencies, pertaining to *248 or connected with the assessment and taxation of real estate, which it assigned and transferred to the board which it created.
In accordance with the terms of the statute the Governor appointed Frank C. Moore, the State Comptroller, Spencer E. Bates and John E. Burton, members of this board and they duly qualified and proceeded to act as such.
On April 4, 1949, petitioner filed a complaint with the State Tax Commission and the respondents objecting to the tentative valuation and equalization rate fixed, and attacking the constitutionality of chapter 346 and the jurisdiction of the new members of the board.
On April 20, 1949, Messrs. Moore and Bates held a hearing upon the complaint at which time petitioner appeared and repeated its objections and offered evidence in support thereof.
On or about May 20, 1949, the board fixed the final full valuation of petitioner’s special franchise and the equalization rate applicable thereto. On the same day it filed with the tax department of the city of New York a statement of the final equalized valuation so determined and it was entered upon the local assessment rolls, by virtue of which petitioner will be subject to the payment of certain taxes.
Petitioner instituted this proceeding on July 14, 1949, to review the determination of the State Board of Equalization and Assessment valuing and determining the equalization rate applicable to its special franchise. In the petition it also alleged the unconstitutionality of the statute involved and the disqualification of one appointee, the State Comptroller, to be a member of such board.
On August 1, 1949, the Attorney-General served a notice of objections in point of law to the allegations of the petition relating to the constitutionality of the statute and the appointment of the State Comptroller and asked for an order deleting those allegations from the petition. The Special Term granted that application and from that order petitioner has come to this court. The only questions before us are the constitutionality of chapter 346 and the validity of the Governor’s designation of Mr. Moore as a member of the board.
Petitioner contends that the statute is unconstitutional for the following reasons:
1. It creates a new ‘1 department ’ ’ in the State Government, in violation of section 3 of article V; the State Board of Equalization and Assessment is not a “ temporary commission for special purposes ” because the functions, powers and duties devolved upon the board as an incident and in aid of its special *249 purposes are themselves neither temporary nor special, but rather, are “ permanent ” administrative duties of the Department of Taxation and Finance.
2. It is vague and indefinite in its terms and leaves to the unrestricted judgment of administrative officers the matter of the determination of their powers, duties, jurisdiction and functions and, as such, constitutes an unlawful delegation of legislative power in violation of section 1 of article III.
3. It incorporates by reference the provisions of existing laws, in violation of section 16 of article III.
Petitioner asserts that the determination to be reviewed is void because section 1 of article Y of the Constitution, prohibits the State Comptroller from being a member of the board.
Section 2 of article Y of the Constitution prescribes that there shall be nineteen departments of the State Government, including the Department of Taxation and Finance. However, neither that section nor any other in the Constitution prescribes the duties, powers or functions to be performed by that department. Those matters are left entirely in the discretion of the Legislature. While the Legislature is under obligation to “ provide for the supervision, review and equalization of assessments for purposes of taxation ” (art. XVI, § 2) neither by reason of that command nor by reason of any other constitutional compunction is the Department of Taxation and Finance vested with those or any other particular administrative responsibilities. None of such responsibilities now or heretofore performed by that department is beyond the province of the Legislature to eliminate, extinguish, abolish, transfer or assign to other administrative agencies of the State Government. In this respect section 3 of article V provides: “ § 3. Subject to the limitations contained in this constitution, the legislature may from time to time assign by law new powers and functions to departments, officers, boards or commissions, and increase, modify, or diminish their powers and functions. No new departments shall be created hereafter, but this shall not prevent the legislature from creating temporary commissions for special purposes and nothing contained in this article shall prevent the legislature from reducing the number of departments as provided for in this article, by consolidation or otherwise.”
Chapter 346 does not provide for the creation of a “ new department ” of the State Government, either in terms or in effect. It does create a “ temporary commission for special purposes ” and simultaneously and incidentally it does “ modify *250 or diminish * * * powers and functions ” formerly performed by the Department of Taxation and Finance. Section 3 of article V provides explicit constitutional authority for both steps.
The Legislature described its newly created agency as a “ temporary state commission ” and placed a time limitation upon its existence — April 1, 1952 — on which date the entire enactment will cease to be of force and effect. It, therefore, clearly appears that the commission is in fact a temporary adjunct of the State’s administrative system. The two purposes to be accomplished by the commission — the review and revision of equalization rates and the preparation and submission of recommendations to the Legislature for the permanent assignment of the jurisdiction, powers and duties which it temporarily controls — • are certainly “ special purposes.” We are satisfied that the legislative disposition is in accord with constitutional requirements.
The principal authority upon which petitioner relies is People v. Tremaine (252 N. Y. 27). That case was decided under the Constitution as it existed prior to 1938. In our opinion that case does not aid petitioner. True, enough, there are dicta in the opinion which give support to its argument.
In the Tremaine case the Court of Appeals held that chapter 5 of the Laws of 1926 and chapter 93 of the Laws of 1929 creating the State Office Site and Building Commission as a “ temporary commission for a special purpose ” and transferring to it certain of the duties of the Department of Public Works, were unconstitutional. In its opinion the court stated (pp. 51, 52) that its expressions regarding the force and effect of section 3 of article V of the Constitution were “ not necessary for the decision ” but that the assignment of “ a part of the duties of a constitutional department * * * to a special commission ” might be “ questionable ”. The court evidently was relying upon the then provision of section 3 of article V which directed the Legislature to assign “ all the civil, administrative and executive functions of the state government, to the several departments in this article provided.” (Italics supplied.)
It is quite significant that the Constitutional Convention of 1938 deleted that sentence of former section 3 of article V which directed the bestowal of “ all ” of the administrative functions of the State Government upon the several departments. Since that time the dicta in the Tremaine case (supra) have not been accorded any consideration.
*251 The question raised in the Tremaine case (supra) was answered, contrary to the views therein expressed, in Matter of People (Westchester Tit. & T. Co.) (268 N. Y. 432). In 1935 (L. 1935, ch. 19) the Legislature created the Mortgage Commission as a temporary commission for special purposes and conferred upon it certain powers and functions which had been previously assigned to and performed by the Department of Insurance. The validity of the enactment was attacked upon the same grounds advanced by petitioner in this case and in reliance upon the dicta in the Tremaine case (supra). The Court of Appeals upheld the constitutionality of that statute. That decision is decisive of that particular issue in this case.
We are not impressed with petitioner’s argument that the statute is vague and indefinite in its specification of the jurisdiction, functions, powers and duties delegated to the board. The act transfers to the board “ all of the jurisdiction, functions and powers possessed by and all the duties of the state tax commission, the state board of equalization and the department of taxation and finance, pertaining to or connected with the assessment and taxation of real estate * * (Italics supplied.) As we have already shown the Legislature went further, perhaps, than was necessary and specifically itemized the matters transferred.
Petitioner also contends that the statute constitutes a prohibited delegation of legislative power and incorporates other statutes contrary to the provisions of section 16 of article III of the Constitution.
Chapter 346 violates neither the letter nor the spirit of that provision. In terms, it does not provide that any particular existing law is to be deemed a part of that chapter. In terms, it does not provide that any particular law shall be applicable. In terms, it does provide for the devolution upon the State Board of Equalization and Assessment of carefully itemized and specified functions, powers and duties of three existing administrative agencies of the State Government, pertaining to or connected with the assessment and taxation of real estate. In effect, it does require reference to previously enacted statutory provisions, which conferred that jurisdiction upon those predecessor agencies, in order to determine the method of exercising the powers conferred, the procedure involved and the precise limitations upon the scope thereof. In that, it has been repeatedly held by the Court of Appeals, there is no violation of the letter, intent or spirit of this provision of the Constitution (People ex rel. Everson v. Lorillard, 135 N. Y. 285; *252 People ex rel. Bd. of Comrs. of Washington Park v. Banks, 67 N. Y. 568; People ex rel. New York Elec. Lines Co. v. Squire, 107 N. Y. 593; People v. Stedeker, 175 N. Y. 57; Richfield Oil Corp. v. City of Syracuse, 287 N. Y. 234; Matter of Tartaglia v. McLaughlin, 297 N. Y. 419).
In providing for the succession by one administrative agency to the powers, functions and duties of another, the Legislature is not required either to repeat in its enactment the precise terms of all statutes which confer the authority being transferred, or to revise and amend each and every one of such statutes in order to effect the change. Legislative acts transferring to and devolving upon a newly created governmental agency all or part of the jurisdiction, powers and duties of another, have regularly been enacted and regularly sustained in the face of just such an attack upon their validity as is here involved (Curtin v. Barton, 139 N. Y. 505; Burke v. Kern, 287 N. Y. 203).
We are also convinced that the appointment of the Comptroller as a member of the board does not violate section 1 of article V of the Constitution. That section provides for the election of a State. Comptroller and prescribes his duties. He must audit all vouchers before payment and all official accounts; audit the accrual and collection of all revenues and receipts; and prescribe such methods of accounting as are necessary for the performance of the foregoing duties. In addition it is provided that the Legislature shall define the Comptroller’s powers and duties in such respects and it may assign to him supervision of the accounts of any political subdivision of the State, “ but shall assign to him no administrative duties, excepting such as may be incidental to the performance of these functions * *
It is perfectly apparent that nothing contained in chapter 346 of the Laws of 1949 and nothing done pursuant thereto conflicts in any way with either the terms or purpose of this provision of the Constitution. In terms, the restraint imposed is one limiting legislative action and it is confined to such action with reference to the office of State Comptroller. Neither in terms, effect nor purpose is the restraint one which imposes individual disqualification upon the incumbent of that office. Nothing in this provision of the Constitution nor any other purports to disqualify the individual who happens to occupy the office of Comptroller from performing other public functions, duties or services or from holding other public offices not incompatible with that of Comptroller.
*253 Here, the Legislature has assigned no administrative duties to the Comptroller. The Legislature did assign administrative duties to the State Board of Equalization and Assessment, the members of which were to be appointed by the Governor. At that point, this constitutional proscription had not been violated. At that point, it ceased to have any force, effect or application. Thereafter, the Governor, in the exercise of his uncontrolled discretion in such matters, saw fit to appoint Mr. Moore in his individual capacity as a member and chairman of the board, and thereby the Governor bestowed upon him in that capacity certain administrative responsibilities. In this, no constitutional prohibitions have been violated.
The order appealed from should be affirmed, with $10 costs and disbursements.
Fosteb, P. J., Beewsteb, Bergaw and Coon", JJ., concur.
Order affirmed, with $10 costs and disbursements. [See post, p. 954.]